187 So.2d 684 (1966)
Frank L. FRASER, Jr., and Lewis A. Fraser, Appellants,
v.
Marvin W. LEWIS et al., Appellees.
No. 65-581.
District Court of Appeal of Florida. Third District.
June 7, 1966.
Rehearing Denied June 28, 1966.
*685 Mershon, Sawyer, Johnston, Dunwody & Cole and James E. Glass, Miami, for appellants.
Shorenstein & Lewis, Arthur J. Berk, Miami Beach, for appellees.
Before HENDRY, C.J., and CARROLL and BARKDULL, JJ.
HENDRY, Chief Judge.
Plaintiffs, Frank L. Fraser, Jr. and Lewis A. Fraser, instituted this suit to estabish and enforce a trust in their favor upon 25% of the capital stock of Yarmouth Steamship Company, Inc., a Panamanian corporation, then held by the defendants. In their answer, the defendants admitted possession of all of the stock in issue but denied the material allegations of the complaint and asserted that the alleged trust agreement was contingent upon the lending by plaintiffs' father to defendants' vendor the sum of $100,000 and that said loan was never made. Defendants further asserted that they had no notice of the alleged trust prior to purchase of the stock and that the plaintiffs had agreed to release their claim to any of the stock.
The court, in its final decree found that the plaintiffs failed to prove by the required quantum of competent evidence the elements necessary to establish a trust. The court also found that the plaintiffs failed to prove that any notice had been given to the defendants of any rights, if any, of plaintiffs in the stock of Yarmouth Steamship Company, Inc., at any time material to this cause.
The evidence in the record concerning the many transactions involved is conflicting, however, the chancellor resolved these conflicts in favor of the defendants. The evidence, reviewed in a light most favorable to the defendants, reveals that in February, 1962 the S.S. Yarmouth, a Panamanian flag vessel, was owned by McCormick Steamship Corporation, the principal owner and officer of which was *686 Frank L. Fraser, Sr., father of the plaintiffs.
After negotiations with Keith E. Roberts and J.E.L. Webster, both of Jamaica, an agreement was entered into on March 21, 1962 for the sale of the vessel to them for $500,000 payable in cash and mortgage. On the same date, two other documents were prepared, a "trust agreement" and a loan agreement, the first signed by Messrs. Roberts and Webster contained the following:
"In consideration of your selling to us the s.s. `Yarmouth' for the sum of $500,000 (Five hundred thousand dollars) we agree that your sons Frank and Lewis Fraser will be given an interest in the said s.s. `Yarmouth' to the value of $100,000 (One hundred thousand dollars) in shares, for which there will be no monetary consideration. These shares will be held in trust by us and cannot be disposed of without our permission. No dividends will be paid on this stock until the mortgage on the ship has been retired after which they will participate in the same manner insofar as dividends are concerned as the balance of the shares held by us. The shares held in trust shall be subject to the first mortgage which you will hold on the Company."
The second document signed by Frank L. Fraser, Sr. is as follows:
"In consideration of your purchasing the s.s. `Yarmouth' for the sum of $500,000 and your giving my sons Frank and Lewis Fraser an interest in the said s.s. `Yarmouth' to the value of $100,000 in shares, I agree to loan you the sum of $100,000 to be invested in a company for the operation of the said s.s. `Yarmouth', repayment shall be out of the profit of the company and shall not commence until the first mortgage is retired."
On April 2, 1962 an agreement was executed by the parties designating McCormick Shipping Corporation as seller and Yarmouth Steamship Company, Inc., a corporation taken over by Webster and Roberts for this transaction, as purchasers.
The agreement which was prepared by Irving Wolff, Vice-President of Yarmouth Steamship Company and an attorney representing both parties, provided for a sales price of $500,000. There is a similar agreement in evidence reflecting a $600,000 sales price. The defendants assert that the latter agreement was not signed until April 13, 1962, although it is dated April 2, 1962. The defendants also assert that this agreement did not supersede the original agreement but was to show a higher sales price for "public consumption". On April 30, 1962, the mortgage was executed for $400,000 and at the same time Messrs. Roberts and Webster signed a document to turn over 25% of the authorized capitalization of the company or one hundred shares to the plaintiffs when the mortgage was discharged and paid in full. It was further agreed that during the interval of the outstanding indebtedness of the mortgage the capitalization would not be altered, modified or in any way discharged.
Subsequently, Felipe S. Tapia, a Panamanian attorney and secretary of the Yarmouth Steamship Company, Inc., issued the entire authorized capital stock of $400,000 divided into four hundred shares as follows: 1 stock certificate for 150 shares in the name of Mr. K.E. Roberts; 1 stock certificate for 150 shares in the name of Mr. J.E.L. Webster; 2 stock certificates for 50 shares each to bearer.
On June 22, 1962 Frank L. Fraser, Sr. died. The defendants allege that the $100,000 loan previously agreed upon was never made. Subsequently, in November, 1962, Jules Sokoloff, a Canadian citizen residing in Coral Gables loaned Messrs. Roberts and Webster $62,000. Sokoloff was given the option of repayment in cash or 1/3 of the stock of Yarmouth Steamship Company, Inc. At this time, one Marvin *687 W. Lewis was acting as Mr. Sokoloff's attorney. In the same month Webster sold all of his shares to Roberts.
Sokoloff chose the stock as repayment on the loan. On February 18, 1963, Roberts gave Lewis all of the shares in the steamship company and told him to effect a transfer of a 1/3 interest to Sokoloff. At the same time, Roberts and Webster turned over a stock power to Sokoloff of fifty shares each, the latter because the original stock certificates were still registered in his name.
In March, 1963, arrangements were made for Roberts and Sokoloff to sell all of the Yarmouth stock to a syndicate headed by Lewis. On March 11, 1963, Roberts and Webster signed stock powers in favor of Lewis for 150 shares each (the original stock certificates still bearing Webster's name) and Sokoloff signed stock powers for 100 shares. On March 25, 1963 Lewis gave $10,000 to Webster, Roberts and Sokoloff and on March 29, 1963 he gave $92,000 to Roberts. During the month of April, 1963, the transaction was completed by payments totalling $23,000.
The plaintiffs contend that the chancellor erred in finding that they failed to prove by the required quantum of competent evidence the elements necessary to establish a trust.
A clear preponderance of the proof is required to establish an express trust.[1] "To constitute a valid `trust' in personally `three circumstances must occur: sufficient words to raise it; a definite subject matter; and a certain and ascertained subject'. Such a trust may be created by deed or may rest entirely in parol, or may be partially in writing and partially in parol."[2] Further, the general rule concerning construction of contracts is to determine the intention of the parties thereto and if the argument has been made in two or more documents its interpretation should be obtained from construction of both.[3]
We must, therefore, construe the agreement for sale, the so-called "trust agreement" and the agreement to loan, which were executed simultaneously, with reference to each other. We note here that the plaintiffs produced an expert witness who stated that the signature on the loan agreement was a forgery. Roberts and his secretary testified to the authenticity of the loan agreement alleging they were eye witness to its execution. While some discredit may be placed upon the testimony of Roberts and his secretary because of their interest in the litigation, we can not conclude as a matter of law that the expert's testimony was sufficient to overcome the testimony of the eye witnesses.[4]
The testimony of Mr. Tapia, secretary of the Yarmouth Steamship Company, Inc., conclusively established that the two certificates for 50 shares each issued to bearer according to the instructions agreed upon by all parties concerned were to be held for the plaintiffs. Mr. Tapia remembers specifically that Frank L. Fraser, Sr. wanted the bearer shares for his children. Mr. Wolff representing all parties to the agreement, testified to the same effect. The defendants, however, have asserted that if Frank L. Fraser, Sr. is the settlor of the alleged trust it must fail as he never had legal and equitable dominion over the bearer shares as this was contingent upon a loan which was never made. In construing the three documents mentioned above in relation to each other, it appears that Messrs. Roberts and Webster gave an interest in the steamship company to the plaintiffs in consideration *688 of Fraser, Sr. selling them the ship for $500,000 and loaning them $100,000. Fraser, Sr. agreed to loan them the money in consideration of both the purchase of the ship and the interest given to the plaintiffs. Thus, it can be seen that the loan was but a part of the consideration given for the shares to be held in trust for the plaintiffs, and, in fact, the loan agreement is not mentioned in the "trust agreement". Further, as late as March 28, 1963, Webster, by letter sought a release from the plaintiffs, stating, "As you know, upon the completion of the payment of the mortgage money we arranged to give you 25% of the shares in Yarmouth Steamship Company and we will have to get a release from this in order to complete the transaction, and save the companies from going into bankruptcy." Based on this, it is our opinion that the failure of the loan agreement was not so material as to discharge the duty of Messrs. Roberts and Webster under the "trust agreement". There is, therefore, a definite subject matter. The defendants further assert that there is a question concerning who is to be the trustee of the alleged trust. The "trust agreement" though unsigned by the settlor was apparently approved by him as evidenced by the loan agreement. The written instrument clearly indicates that the trustees are to be Roberts and Webster who are to hold and control the shares until the mortgage on the ship is paid off. At that time they are to turn over the shares to the beneficiaries  the plaintiffs, who may then participate in the dividends.
We have, therefore, determined that the elements necessary to establish an express trust with the 100 shares issued to bearer in the Yarmouth Steamship Company, Inc. as the subject matter were proven by a clear preponderance of the evidence.
Plaintiffs also contend that the chancellor erred in finding that the defendants received no notice of plaintiffs' interest at any time material to the cause.
Notice of an outstanding equity or an unrecorded interest may be either actual or constructive. If there is such notice before a purchaser has paid the purchase price or has become irrevocably bound for its payment he is not protected as a bona fide purchaser even though he may have received an instrument purporting to convey to him the whole title, both legal and equitable.[5]
The defendants argue that the evidence conclusively shows that the subject matter of the trust, the bearer shares, were transferred to Sokoloff in February, 1963, at which time neither he nor his attorney had notice of the trust agreement. However, a close examination of the record reveals that Sokoloff was to receive his 1/3 interest in the Yarmouth Steamship Company, Inc. out of shares owned by Roberts and Webster. His attorney, Lewis, was furnished all of the shares in the company and told to effect a transfer of a 1/3 interest to Sokoloff. At the same time, Tapia, the company's secretary, was informed by Roberts and Webster that a 1/3 interest was sold to a client of Mr. Lewis. Thus, this transaction could be completed without the necessity of using the bearer shares and it is unnecessary to determine whether Sokoloff was a bona fide purchaser for value without notice.
Following this, all the shares including the subject matter of the trust were transferred to a syndicate headed by Lewis. On February 18, 1963 Lewis wrote Tapia indicating that his client had purchased a 1/3 interest in the steamship company and requesting the names of the owners of the issued stock and the issuance of two new certificates representing a 2/3 interest to Roberts and a 1/3 interest in blank. On February 22, 1963, Tapia wrote Roberts indicating that he could not comply *689 with Lewis' request because there were no more shares to be issued and because "everything seems to indicate that you are not the owner of all the shares of Yarmouth." On February 25, 1963 Lewis wrote Tapia that he had discussed the matter with Roberts and was sorry if there appeared to be any ambiguity in his previous letter. He indicated that his only interest was to see that his client became the owner of 33 1/3% of the stock. On March 13, 1963, Tapia wrote Lewis and informed him of the owners of the stock indicating that there was no means of knowing who was the present owner of the shares issued to bearer. On the same date Tapia wrote Roberts and Webster indicating that he wished to safeguard his responsibility because of the agreement between Roberts and Webster and Mr. Fraser, Sr. concerning the bearer shares. On March 25, 1963 Lewis, who was now acting for himself, gave $10,000 to Webster, Roberts and Sokoloff toward the purchase of the entire company. On March 27, 1963, Lewis made a telephone call to Tapia and stated he needed urgent verification of the title and mortgage on the S.S. Yarmouth. Because of a bad connection the call was terminated before any information could be given. On March 28, 1963 Lewis received a telegram from Tapia advising him that the Yarmouth Steamship Company, Inc. is the sole owner of the S.S. Yarmouth. The last sentence of the telegram noted, "Highly recommend awaiting said letter [of confirmation] before taking any action." On March 28, 1963, Tapia wrote Lewis fully informing him of the interest of the plaintiffs. Lewis testified he did not receive the letter until April 1, 1963. On March 29, 1963, Lewis gave $92,000 to Roberts and during April furnished the remaining payment of $23,000.
We have determined that the negotiations related above were such as to give Lewis knowledge of circumstances concerning the bearer shares which in the exercise of prudence ought to have put him on inquiry,[6] which would have disclosed the plaintiffs' interest prior to the time he paid the purchase price or became irrevocably bound for its payment.
We have concluded that the chancellor misapprehended the legal effect of the evidence as a whole. We have determined that the plaintiffs are entitled to 25% of the capital corporate stock of Yarmouth Steamship Company, Inc. to be held in trust by the defendants until the mortgage dated April 30, 1962 on the S.S. Yarmouth a Panamanian vessel, is discharged and paid in full. Until said time, capitalization of the company will not be altered, modified or in any way changed. The final decree as modified is therefore reversed and the cause remanded so that the chancellor may enter a decree in accordance with this opinion.
Reversed and remanded.
NOTES
[1] Columbia Bank for Coop. v. Okeelanta Sugar Co-op., Fla. 1951, 52 So.2d 670.
[2] Grapes v. Mitchell, Fla. 1963, 159 So.2d 465; Bay Biscayne Co. v. Baile, 73 Fla. 1120, 75 So. 860 (1917).
[3] Hughes v. Professional Insurance Corporation, Fla.App. 1962, 140 So.2d 340.
[4] In re Krugle's Estate, Fla.App. 1961, 134 So.2d 860.
[5] Myers v. Van Buskirk, 96 Fla. 704, 119 So. 123 (1928); Wise v. Quina, Fla.App. 1965, 174 So.2d 590.
[6] Sapp v. Warner, 105 Fla. 245, 141 So. 124, 143 So. 648 (1932).