## WIND v GRAHAM, et al.

### Case No. 74-1769

Second Judicial Circuit, Leon County

May 13, 1983

## OPINION OF THE COURT

JOHN A. RUDD, Circuit Judge.

This action was brought in 1974 by Plaintiff, FRED WIND, a Californian of Dutch ancestry, for an accounting, brought on by the refusal of the State of Florida to pay him certain alleged trust funds on his presentment of a $1,000 bearer bond, carrying 8% interest and payable in gold which was issued by the State of Florida in 1870.

The bond issue in question has an interesting history, having occurred during Florida's reconstruction era following the Civil War, and being colored by the recklessness of that era. There are numerous historical accounts in the record, both dating from the era as well as recent scholarly works concerning the era. However, they need not be repeated here for the disposition of this cause.

The bond was issued pursuant to Ch. 1731, Law of Florida (1870),

to finance a railroad to extend from Jacksonville, Florida to Mobile, Alabama, which became known as the Jacksonville, Pensacola & Mobile R.R. Co. (JP&M). Most of the 4,000 bonds issued were sold in Holland in the early 1870's and Plaintiff came into possession of his through his wife, her sisters, and their ancestors.

The financing of the JP&M through issuance of the Ch. 1731 bonds was accomplished by the exchange of bonds of the JP&M for the Ch. 1731 State bonds, thereby enabling the promoters of the JP&M to offer the State bonds for sale. The State bonds were more marketable due to the provisions of Ch. 1731 creating a lien on the JP&M in favor of Florida for the benefit of purchasers of the Ch. 1731 bonds. Chapter 1731, Laws of Florida, (1870), provided in pertinent part:

> . . . [I]n case of failure of the company to pay either principal or interest on its bonds or any part thereof for twelve months after the same shall become due, it shall be lawful for the Governor to enter upon and take possession of said property and franchises, and sell the same at public auction, . . . and all moneys arising from said sale and paid into the Treasury of this State, as heretofore prescribed shall be promptly and exclusively applied to the payment and satisfaction of the bonds issued by the State of Florida under this act, and in case the holders of said bonds do not present them for redemption within ninety days after said sale, or any part thereof which may be remaining in his hands, in the securities of the United States, to be held by the State of Florida, as trustee for the bondholders. . . .

Shortly after the bonds were sold abroad, the JP&M defaulted on its interest payments on the State bonds due to the misappropriation of the proceeds by the railroad's promoters.

As a result of the default, various interests, including the State of Florida, initiated litigation. It was soon learned that the entire matter was steeped in fraud. The promoters of the JP&M, George W. Swepson and Milton S. Littlefield, among others, gained control of the Pensacola and Georgia, the Tallahassee and the Florida Central Railroads, which were the skeleton of the proposed JP&M, without the expenditure of a dollar of their own funds. The money used for the purchase of the above railroads came primarily from the Western Division of the Western North Carolina R.R. Co., of which Swepson was president. The money used for this purpose was apparently embezzled by Swepson after the State of North Carolina had issued over six million dollars worth of bonds to complete the construction of the Western Division Railroad. This apparently was not enough, for he

14

purchased the Pensacola and Georgia Railroad for $472,000 from the State of Florida* with a worthless check.

Thus, a hiatus was born which grew into a decade of litigation reaching both the Florida and U.S. Supreme Courts. *Holland v. Florida*, 15 Fla. 454 (Fla. 1876), *Railroad Co. v. Schutte*, 103 U.S. 118 (1880), *inter alia*. Without unnecessarily delving into that litigation, which at the time was described by the U.S. Supreme Court as a "confused mass of papers brought as a transcript of part of the record below, and filling nearly fifteen hundred pages," it is sufficient to note the following facts as established:

1. The Florida Supreme Court in *Holland v. Florida*, supra, declared the issuance of the Ch. 1731 bonds unconstitutional.

2. In so doing, however, the Court in *Holland* held that while the bonds were invalid, the State of Florida held its statutory lien on the railroad for the benefit of the bondholders.

3. In so holding, the Court in *Holland* did not hold that the relation and rights of the State as "trustees" were the result of any equity springing from the circumstances, independent of the statute, but that its relation as trustee was a creature of the statute.

4. Chapter 1731, Laws of Fla. (1870) did not mandate the Governor to sell the railroads, it only empowered him to sell it.

5. The Ch. 1731 trust was to be funded from the proceeds of a sale of the railroad by the state which remained in the treasury of the State 90 days after the sale.

On March 17, 1980, this Court entered an Order on partial summary judgment holding the following:

(a) Chapter 1731, Section 3, Laws of Fla. (1870), expresses an intent to create a trust to be funded by proceeds of the sale of railroad property subject to the lien and seizure already granted defendants by Ch. 1731.

(b) The object of the trust was to protect holders of bonds exchanged and sold in accordance with Ch. 1731.

(c) Under Ch. 1731, defendants were to act as trustees of the trust when funded.

---

* The Pensacola & Georgia (P&G) was chartered under the Internal Improvement Act of 1855 by the State of Florida, and bonds of the P&G were guaranteed out of the Internal Improvement Land Fund. The Civil War ruined most of the railroads in Florida, including the P&G, which defaulted on its bond's interest payments and was sold in foreclosure by the State for the benefit of P&G bondholders.

(d) The trust funds have not been accounted for by defendants as trustees.

(e) Plaintiff is a bona fide holder of a bond exchanged and sold pursuant to Ch. 1731.

At the trial of this cause, the parties stipulated that their documentary trial exhibits be admitted and given whatever weight the Court deemed appropriate. There was no testimony given other than the deposition of Plaintiff, and the parties having waived argument, submitted trial memoranda for the consideration of the Court.

The following issues were presented to the Court for determination:

(1) Whether the Defendant's affirmative defense of laches bars the relief prayed for by Plaintiff in his attempt to receive payment on the bond pursuant to the alleged Ch. 1731 trust.

(2) Whether the express conditions precedent in Ch. 1731 occurred so as to fund the trust and require the Defendants to account therefor.

The Court having read the trial exhibits of the parties and their memoranda, and being otherwise fully advised in the premises reached the following determinations of fact and conclusions of law and it is,

ORDERED and ADJUDGED that:

1. The Plaintiff, FRED WIND, has the burden of proof to establish that the alleged trust was funded by a clear preponderance of the evidence. *Fraser v. Lewis*, 187 So.2d 684 (Fla. 3rd DCA 1966). It is the decision of this Court, upon due consideration of the evidence presented, that plaintiff has failed to carry this burden. Chapter 1731, Laws of Fla. (1870) expressed the intention to create a trust from proceeds of a sale of the JP&M Railroad by the State of Florida. No evidence was presented by Plaintiff to establish that the State of Florida ever sold the Railroads in question so as to fund the trust. To the contrary, the Defendants produced clear and convincing evidence that Federal judiciary took control of the Ch. 1731 railroads in question (the JP&M and the Fla. Central) pursuant to a receivership in the 1870's and ultimately sold the railroad and distributed the proceeds to bondholders pursuant to Orders of the Federal Court.

2. The Defendants have carried their burden of proof on their laches defense so as to bar Plaintiff's prayer for an accounting and any relief flowing therefrom.

It is a finding of this Court that this cause presents a classic case of laches, the proof of which was established clearly and convincingly by evidence presented by Defendants in accord with the elements of laches contained in *Van Meter v. Kelsey*, 91 So.2d 327 (Fla. 1956), as follows:

16

(A) The state repudiated the alleged trust by:

(1) Failure by the State to recognize the Ch. 1731 trust is shown by the list of exhibits in the absence therein of any act subsequent to 1879 by the State as trustee.

(2) Conforming with the Federal Court order of May 31, 1879 (confirmed 1881), which in effect dissolved the Ch. 1731 trust.

(3) Passing Ch. 3325, Laws of Fla. (1881), in conformance with Federal Court order of May 31, 1879, recognizing the supremacy of the State's vendor's lien in derogation of Ch. 1731, Laws of Fla. (1870).

(4) Application of the proceeds of the vendor's lien ultimately paid the State by Sir James Reed (pursuant to his Deed purchasing the JP& M RR from the trustees of the bondholders) to holders of P&G RR bonds to which the vendor's lien ultimately applied.

(5) Complicity of the Board of Trustees of the Internal Improvement Fund with C.D. Willard, Esq., attorney at law and in fact, for the Dutch bondholders and Henry Jackson, attorney for P&G bondholders in agreeing to allow the Federal Court to dissolve the Ch. 1731 trust and seeking the consent of the Dutch bondholders that the State's Vendor's lien be the paramount lien.

(b) Plaintiff knew, or should have known of the repudiation and had the opportunity to assert his claim.

(1) Court decisions are law and the world was on notice of the May 31, 1879 decision and later confirmination of its order, dissolving the trust.

(2) Legislative acts, as Ch. 3325 are also notice to the world.

(3) The overwhelming majority of Dutch bondholders united to assert their claim in the 1870's-80's and were represented by C.D. Willard, et al., in Federal Court where the Ch. 1731 trust was superseded by federal receivership in foreclosure and declaration of the prior vendor's lien. Clearly, the opportunity existed for Plaintiff's predecessor to join with the others. While he did prematurely assert his claim through his broker in 1872, there is no indication that he continued when his claim ripened upon the actual sale of the JP&M in 1879.

(C) The State could not have known that Plaintiff would bring this action.

(1) The bond was declared void in 1875 for being unconstitutionally issued.

(2) The Federal Courts took control of the entire matter through a final resolution prior to the turn of the Century.

(3) There was no evidence presented that the trust funds ever existed.

(4) There is a letter in response to an inquiry into the instant bond signed by Richard Ervin, Florida's Attorney General in 1959, stating that while the bond has no intrinsic value, it may have "some historical or sentimental value."

(5) By uncontradicted affidavit and stipulation, the Defendants have no record of the alleged trust fund existing or ever having existed.

(D) There is both injury and prejudice to the Defendants from the delay by Plaintiff in asserting his claim.

(1) The evidence clearly establishes that the Federal Court sitting in Jacksonville took control of this entire controversy in the 1870's and 1880's, and that Courthouse, along with the records of this matter were destroyed by fire, most likely the great Jacksonville fire of May 3,1901.

(2) The old Board of Trustees of the Internal Improvement Fund purged their files in 1952 and 1960-61 and likely discarded many documents pertinent to this matter.

(3) There are no living witnesses with firsthand knowledge of the matters at issue herein.

(4) The passage of time may have greatly increased any liability the Defendants may have incurred.

3. While this Court has hereby ruled that laches operates to bar the granting of any relief to the Plaintiffs, nevertheless, the evidence presented by the Defendants from surviving documents in the form of the Order of the Federal Court in 1879 and 1881, coupled with journals of the Legislature in 1870's and 1880's containing references to said order and a republished lost Deed to the JP&M R.R. pursuant to the Order of the Circuit Court of Suwannee County, 1921, establishing the chain of title of the Seaboard Railroad Co. to said railroad has convinced this Court and it so rules that:

(A) That the Federal Court in Jacksonville took control of the railroads in question in the 1870's pursuant to a receivership, marshalled their assets, and sold the railroads in 1879, confirmed in 1881.

(B) That the bondholders themselves bought the railroad subject to the State's Vendor's lien through their attorney at law and in fact, C.D. Willard. Said purchase by the beneficiaries of the res merged both legal and beneficial title of the trust res in its beneficiaries and thereby extinguished the trust.

18

(C) That pursuant to the Order of the Federal Court the proceeds of that sale (as well as assets of the railroads in question remaining in the hands of other Court and in the Treasury of the State of Florida,*) were paid into the registry of the Federal Court in Jacksonville to be distributed on a pro rata basis to the bondholders.

(D) That as late as 1893, claims of said bondholders were being paid from said Federal Court registry.

(E) That said Federal Court retained jurisdiction to resolve any remaining equities pursuant to its order of 1879. *Schutte v. Fla. Central RR Co., et al.*, 3 Woods 691, 29 F. Cas. 747 (Cir. Ct. N.D. Fla. 1879), (Bradley, Cir. Judge), affirmed *Railroad Companies v. Schutte*, 103 U.S. 118 (1880), further making it impossible for the State of Florida to have ever funded the trust.

It is therefore adjudged that for the reasons stated herein, Plaintiff's claim on its bond is both stale by way of laches and otherwise without merit, and that the Defendants are not obligated to pay anything to Plaintiff pursuant to the bond presented and Ch. 1731, Laws of Fla. (1870).

The court hereby retains jurisdiction to assess costs in favor of the Defendants.

---

\* Plaintiff presented evidence that the State of Florida received earnings of the Railroad pursuant to a court action which occurred prior to the final federal sale of the railroad. These monies, amounting to $35,000, were not proceeds of the sale of the railroads so as to be trust funds. They were assets of the railroads and pursuant to Federal Court Order were to be paid into the registry of the Federal Court. No evidence was presented that they were not. Evidence was presented by Defendants showing that the State of Florida obeyed said Court Order. Plaintiff's remaining claim of an excess of $600,000 ordered to be paid to Florida pursuant to *Railroad Companies v. Schutte*, 103 U.S. 118 (1880) represents the amount adjudicated to be owed the State of Florida on its superior vendor's lien as a result of the bad check issued Florida by the promoters of the JP&M.