615 So.2d 661 (1993)
Sharon ZUCKERMAN, Petitioner,
v.
Jack ALTER, Respondent.
No. 78693.
Supreme Court of Florida.
January 28, 1993.
Rehearing Denied March 31, 1993.
Robert W. Goldman and D. Scott Elliott of Steel, Hector and Davis, West Palm Beach, for petitioner.
Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, for respondent.
McDONALD, Justice.
We have for review Alter v. Zuckerman, 585 So.2d 303, 311 (Fla. 3d DCA 1991), in which the district court certified the following question to be of great public importance:

*662 WHETHER PARAGRAPH 689.075(1)(g), FLORIDA STATUTES (1989), CREATES A SINGLE TEST, OR TWO ALTERNATIVE TESTS, FOR THE VALIDITY OF AN INTER VIVOS TRUST EXECUTED ON OR AFTER JULY 1, 1969, WHERE THE SETTLOR IS THE SOLE TRUSTEE?
We have jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution. We approve the district court's decision and hold that subsection 689.075(1)(g) creates two alternative tests, not a single test, to determine the validity of an inter vivos trust of which the settlor is the sole trustee.
Celia Kahn died testate in 1986, naming her nephew Jack Alter personal representative, devising all her household goods and personal effects to Alter, and leaving the residuary of her probate estate to her nieces Sharon Zuckerman and Beverly Kanter. A brokerage account containing the majority of Kahn's assets passed outside her will through a 1982 inter vivos trust that Kahn executed as sole trustee for the benefit of Alter.[1] The trust instrument was a standardized form that Kahn obtained and filled out herself. Kahn's signature on the trust instrument was notarized, but was not attested to by two subscribing witnesses.
Zuckerman and Kanter petitioned the court for a determination that Kahn's inter vivos trust contained testamentary aspects and was therefore invalid because the notary public's sole witnessing signature failed to satisfy Florida's will execution requirements.[2] The circuit court entered summary judgment in favor of Zuckerman and Kanter, determining that the inter vivos trust was ineffective to transfer the trust corpus to Alter upon Kahn's death. As a result, the trust assets were held to pass through the residuary clause of the will as part of Kahn's probate estate.
The district court reversed and remanded, holding Kahn's inter vivos trust valid because it complied with the formalities of subsection 689.075(1)(g), which creates two alternative tests, not a single test, to determine the validity of an inter vivos trust of which the settlor is the sole trustee. Under the first test, such a trust instrument need only be executed in accordance with the required formalities for an inter vivos trust; the alternative test requires that such a trust instrument be executed in accordance with the formalities required for the execution of wills. The court denied rehearing and certified the above question to this Court.
Subsection 689.075(1)(g) provides:
(1) A trust which is otherwise valid, including, but not limited to, a trust the principal of which is composed of real property, intangible personal property, tangible personal property, the possible expectancy of receiving as a named beneficiary *663 death benefits as described in s. 733.808, or any combination thereof, and which has been created by a written instrument shall not be held invalid or an attempted testamentary disposition for any one or more of the following reasons:
* * * * * *
(g) Because the settlor is, at the time of the execution of the instrument, or thereafter becomes, sole trustee; provided that at the time the trust instrument is executed it is either valid under the laws of the jurisdiction in which it is executed or it is executed in accordance with the formalities for the execution of wills required in such jurisdiction.

(Emphasis added.) Whether subsection 689.075(1)(g) applies to Kahn's written inter vivos trust depends upon a threshold determination that the trust is "otherwise valid." In Florida, formalities for the conveyance of real property are similar to will execution formalities. § 689.01 (requiring real estate conveyances to be written and signed in the presence of two subscribing witnesses), § 689.05 (requiring trusts of real property to be written and signed), Fla. Stat. (1989). However, Florida inter vivos trusts of personal property may be created by deed, may rest entirely on parol, or may be partially in writing and partially in parol, provided the words employed are sufficient to create a trust. In re Estate of Pearce, 481 So.2d 69 (Fla. 4th DCA 1985), review denied, 491 So.2d 280 (Fla. 1986); see also In re Estate of Craft, 320 So.2d 874 (Fla. 4th DCA 1975), cert. denied, 336 So.2d 105 (Fla. 1976); Fraser v. Lewis, 187 So.2d 684 (Fla. 3d DCA 1966). Kahn's written inter vivos trust of personal property employs words sufficient to create a trust and is therefore "otherwise valid" under Florida law. As such, Kahn's trust satisfies the threshold requirement of subsection 689.075(1)(g) and falls within the scope of the statute.
Once within the scope of the subsection 689.075(1)(g), the validity of Kahn's inter vivos trust turns upon whether it is "either valid under the laws of the jurisdiction in which it is executed or it is executed in accordance with the formalities for the execution of wills required in such jurisdiction." (Emphasis added). Words of common usage, when employed in a statute, should be construed in their plain and ordinary sense. Pederson v. Green, 105 So.2d 1 (Fla. 1958). Furthermore, the legislature is assumed to have expressed its intent through the words found in a statute. Thayer v. State, 335 So.2d 815 (Fla. 1976). If the language of a statute is clear and unambiguous, the legislative intent must be derived from the words used without involving rules of construction or speculating as to what the legislature intended. Tropical Coach Line, Inc. v. Carter, 121 So.2d 779 (Fla. 1960). The plain language of subsection 689.075(1)(g), especially the disjunctive effect of the words "either" and "or," unequivocally establishes two alternative tests, not a single test, to determine the validity of an inter vivos trust of which the settlor is the sole trustee.
As such, we reject Zuckerman's contention that the two alternative tests set forth by subsection 689.075(1)(g) should be read coterminously to establish a single test that requires compliance with the formalities for the execution of wills. The plain language of subsection 689.075(1)(g) provides an alternate test to determine the validity of inter vivos trusts of which the settlor is the sole trustee; namely, that the trust be valid under the laws of the jurisdiction in which it was executed. As previously discussed, Kahn's written inter vivos trust of personal property employs language sufficient to create a trust and is therefore valid under Florida law. Such a determination necessarily validates the trust under subsection 689.075(1)(g).
Furthermore, Kahn's trust is not a testamentary "will substitute" that requires compliance with the formalities for the execution of wills. If by the terms of the trust an interest passes to the beneficiary during the life of the settlor, although that interest does not take effect in enjoyment or possession before the death of the settlor, the trust is not testamentary. *664 Restatement (Second) of Trusts § 56, cmt. f (1957). Moreover,
[w]here an interest in the trust property is created in a beneficiary other than the settlor, the disposition is not testamentary and invalid for failure to comply with the requirements of the Statute of Wills merely because the settlor reserves a beneficial life interest or because [s]he reserves in addition a power to revoke the trust in whole or in part, and a power to modify the trust, and a power to control the trustee as to the administration of the trust.
Id. at § 57; see also id. at cmt. h (applying § 57 not only to settlors transferring property to another as trustee, but also to settlors declaring themselves trustee of the property). In the instant case, Kahn's trust created a contingent equitable interest in remainder in Alter during Kahn's life. See id. at § 56, cmt. f, illus. 8. The trust is therefore not testamentary and need not comply with will execution formalities.
The district court thoroughly explored the histories of both section 689.075, Florida Statutes (1989), and sections 56 and 57 of the Restatement (Second) of Trusts (1957) to reach the same conclusion that we reach today. The language of subsection 689.075(1)(g) is clear on its face, and we refuse to speculate beyond its plain meaning. The legislature, not this Court, is charged with determining whether to extend the formalities of the statute of wills to inter vivos trusts of personal property of which the settlor is the sole trustee. We therefore approve the decision of the district court and hold that subsection 689.075(1)(g) provides two alternative tests to determine the validity of such trusts.
It is so ordered.
BARKETT, C.J., and SHAW and KOGAN, JJ., concur.
OVERTON, J., dissents with an opinion, in which GRIMES and HARDING, JJ., concur.
GRIMES, J., dissents with an opinion, in which OVERTON and HARDING, JJ., concur.
OVERTON, Justice, dissenting.
As the author of the opinion in Lane v. Palmer First National Bank & Trust Co., 213 So.2d 301 (Fla. 2d DCA 1968), I fully agree with the dissent of Justice Grimes. The history and interpretation of section 689.075, Florida Statutes (1989), by Justice Grimes in his dissent is correct and, in my view, in full accord with the intent and purpose of the legislature. I write only to emphasize that I strongly believe the majority opinion is clearly contrary to the intent of the legislature and, consequently, suggest that the legislature review this statute at its earliest opportunity.
GRIMES and HARDING, JJ., concur.
GRIMES, Justice, dissenting.
In order to properly construe section 689.075, Florida Statutes (1989), it is necessary to understand the history leading up to the enactment of the statute and the sequence of amendments resulting in its present version.
In Hanson v. Denckla, 100 So.2d 378 (Fla. 1956), reversed on jurisdictional grounds, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), this Court invalidated a revocable inter vivos trust as a result of the cumulative effect of the settlor's reservation of the control over the trust property and the power to dispose of it on her death. Id. at 383-84. The Court found the trust to be illusory and held that an attempted disposition, which had only one subscribing witness, was invalid. Id. at 385. The Court based its holding to a large extent on the Restatement of Trusts § 56 (1935). Hanson, 100 So.2d at 384.
Thereafter, the Second District Court of Appeal in Lane v. Palmer First National Bank & Trust Co., 213 So.2d 301 (Fla. 2d DCA 1968), distinguished the facts of the case before it from those in Hanson and upheld the validity of the testamentary aspects of a revocable inter vivos trust. The court pointed out that the Restatement of Trusts, relied upon by the Court in Hanson, *665 had been rewritten in 1959 to reach the opposite position. Lane, 213 So.2d at 303.
To clear up the uncertainty surrounding revocable living trusts in Florida after Hanson and Lane, the Florida Legislature adopted chapter 69-192, Laws of Florida (codified at section 689.075, Florida Statutes (1969)), which read as follows:
AN ACT relating to declarations of trust; amending chapter 689, Florida Statutes, by adding section 689.075 to list powers that may be retained by the settlor of an inter vivos trust, either singly or jointly with another, without affecting its nontestamentary character; providing for retroactive application to trusts executed by persons living on the effective date of this act; providing an effective date.
Be It Enacted by the Legislature of the State of Florida:
Section 1. Chapter 689, Florida Statutes, is amended by adding Section 689.075, to read:
689.075 Inter vivos trust; powers retained by settlor. 
(1) An otherwise valid trust which has been created by a written instrument shall not be held invalid or an attempted testamentary disposition for any of the following reasons:
(a) Because the settlor or another person or both possess the power to revoke, amend, alter, or modify the trust in whole or in part;
(b) Because the settlor or another person or both possess the power to appoint by deed or will the persons and organizations to whom the income shall be paid or the principal distributed;
(c) Because the settlor or another person or both possess the power to add to, or withdraw from, the trust all or any part of the principal or income at one (1) time or at different times;
(d) Because the settlor or another person or both possess the power to remove the trustee or trustees and appoint a successor trustee or trustees;
(e) Because the settlor or another person or both possess the power to control the trustee or trustees in the administration of the trust;
(f) Because the settlor has retained the right to receive all or part of the income of the trust during his life or for any part thereof;
(g) Because the settlor is, at the time of the execution of the instrument, or thereafter becomes, sole trustee.
(2) When the settlor is made sole trustee, the trust instrument shall be executed in accordance with the formalities for the execution of wills required at the time of the execution of the trust instrument in the jurisdiction where the trust instrument is executed.
(3) The fact that any one or more of the powers specified in subsection (1) are in fact exercised once, or more than once, shall not affect the validity of the trust or its nontestamentary character.
Section 2. This act shall become effective on July 1, 1969 and shall be applicable to trusts executed before or after said date by persons who are living on or after said date.
To a large extent, chapter 69-192 neutralized this Court's decision in Hanson by declaring that a trust which was otherwise valid could not be held to be invalid or a "testamentary disposition" for any of the reasons listed in the statute. An important aspect of Hanson, however, continued and was codified by chapter 69-192 for socalled one-party trusts like the one in this case, in which the settlor is the sole trustee. Under subsection (2), if the settlor is sole trustee, the trust instrument is required to be "executed in accordance with the formalities for the execution of wills required at the time of the execution of the trust instrument in the jurisdiction where the trust instrument is executed." While chapter 69-192 was generally in line with Restatement (Second) of Trusts § 57 (1959), they were not mirror images of each other. Subsection (2) of chapter 69-192 contained an execution requirement not found in the Restatement, but determined to be necessary by our legislature. Even Alter concedes that under the 1969 version *666 of the statute, Ms. Kahn's unwitnessed trust instrument would not be valid.
However, two years later the statute was amended by repealing section (2) of the 1969 statute and amending section (1) to read in pertinent part:
Section 1. Paragraph (g) of subsection (1) of section 689.075, Florida Statutes, is amended to read:
689.075 Inter vivos trusts; powers retained by settlor. 
(1) An otherwise valid trust which has been created by a written instrument shall not be held invalid or an attempted testamentary disposition for any of the following reasons:
... .
(g) Because the settlor is, at the time of the execution of the instrument, or thereafter becomes, sole trustee; provided, however, that at the time the trust instrument is executed it is either valid under the laws of the jurisdiction in which it is executed or it is executed in accordance with the formalities for the execution of wills required in such jurisdiction.

Ch. 71-126, § 1, Laws of Fla.
The issue in this case is whether the 1971 amendment had the effect of eliminating the requirement that a trust created in Florida in which the settlor is the sole trustee must be executed with the formalities of a will.
The legislative history behind the 1971 amendment indicates the legislature was concerned with trusts validly executed outside of Florida which would be invalidated by this provision if the persons died domiciled in Florida. The following is an excerpt from testimony given by Representative Johnson on the floor of the Florida House of Representatives on April 30, 1971, related to the 1971 amendment:
What this does is prevent many people who come to Florida, and this happens in a number of cases, a person will retire, come to Florida, and within 12 months will be dead. And, this prevents that person from dying intestate when he didn't intend to. He created an estate plan to give his estate the proper consequences to his beneficiary and for taxes and everything else and perhaps he has not had the chance to visit one of our outstanding attorneys in this state. But this prevents him from dying intestate. And that is the only application of the law.
Obviously, the legislature was concerned that other states might have less strenuous requirements for execution of one-party trusts than Florida and that settlors who executed the trusts in accordance with their state's laws, but not in accordance with their state's laws for executions of wills, would have invalid trusts under Florida law.
Under the rationale of the majority opinion, by referring to a trust instrument which is valid under the laws of the jurisdiction in which it was executed, the legislature meant to include Florida. Yet, if this were so, there would be no reason for any reference to execution in accordance with the formalities of the execution of wills. A trust valid under the laws of Florida would obviously be valid in Florida. In a circuity of reasoning, the majority construes section 689.075 to mean that "[a]n otherwise valid trust" shall not be held invalid for any of the specified reasons, providing it is "valid."
It has been suggested that if the legislature had intended the word "jurisdiction" to mean jurisdictions other than Florida, it would have said so. The simple answer to this is that the legislature had already determined that Florida trusts in which the settlor acts as trustee should be executed with the formalities of the execution of a will. The 1971 amendment was designed to ensure that the statute did not invalidate otherwise valid trusts which had been executed in other jurisdictions without the formality of a will. According to the majority's construction, the statute now means that "[a]n otherwise valid trust ... shall not be held invalid ... [b]ecause the settlor is ... sole trustee; provided, however, that at the time the trust instrument is executed it is ... valid under the laws of" Florida. This makes no sense and creates an obvious ambiguity. Therefore, it is appropriate *667 to consider legislative history in order to determine what the legislature had in mind.
The 1975 amendment to section 689.075 further reflects the legislature's intent that one-party trusts created in Florida be executed with the formalities of a will. The 1975 amendment was in direct response to this Court's decision in Castellano v. Cosgrove, 280 So.2d 676 (Fla. 1973), which held that section 689.075 was intended to apply only to real property and not personally and that the statute's retroactive application was an unconstitutional impairment of contract. Chapter 75-74, Laws of Florida, made it clear that section 689.075 included trusts of personal property and also contained the following additional language:
(4) This section shall be applicable to trusts executed before or after July 1, 1969 by persons who are living on or after said date. However, the requirement of conformity with the formalities for the execution of wills as found in subsection (1)(g) shall not be imposed upon any trust executed prior to July 1, 1969.

Section 2. The amendment of s. 689.075, Florida Statutes, by section 1 of this act is intended to clarify the legislative intent of s. 689.075 at the time of its original enactment, that s. 689.075 applies to all otherwise valid trusts which are created by written instrument and which are not expressly excluded by the terms of such section, and that no such trust shall be declared invalid for any of the reasons stated in subsections (1) and (3) of such section regardless of whether the trust involves or relates to an interest in real property.
If the requirement of execution of one-party trusts in accordance with the formalities for execution of wills no longer existed in 1975 as a result of the 1971 amendment and Floridians were free to use the Restatement (Second) approach to trust execution, the legislature would have had no need to change the effective date. Indeed, this amendment prompted well-known probate lawyer William S. Belcher to observe:
Subsection "4" provides that the requirement of conformity with the formalities for the execution of wills found in Paragraph 1(g) shall not be imposed upon any trust executed prior to July 1, 1969.
It would follow, therefore, that any such trust executed after July 1, 1969 in the State of Florida must be executed in accordance with the formalities required for the execution of a will.
William Belcher, Avoiding Problems Under F.S. 689.075, Action Line (The Fla.Bar Real Prop., Prob. & Tr.Law Sec.), Feb. 1983, at 2. Other commentators have also interpreted the current statute as requiring one-party trusts created in Florida to be executed with the formality of a will. The Fla.Bar, Basic Estate Planning in Florida, § 8.12, at 344 (1983); The Fla.Bar, Florida Will & Trust Drafting, § 733, at 230 (1982).
It is clear that the legislature has negated most of the rationale of Hanson by adopting most of the Restatement position. However, the legislature determined that a trust in which the settlor serves as trustee should be executed with the formality of a will. A one-party trust which allows the settlor to use the trust property during the settlor's lifetime and then make testamentary dispositions is the functional equivalent of a will. Therefore, it is not surprising that the legislature wished to have such a trust executed under the same formalities as a will in order to assure its authenticity and to avoid the possibility of fraud.
The majority's interpretation of section 689.075 renders utterly superfluous the language pertaining to execution according to the requirements for executing a will. Therefore, the statute cannot be considered clear and unambiguous. When the statute's legislative history is properly analyzed, it becomes clear that the legislature intended that one-party trusts created in Florida be executed with the formality of a will. I respectfully dissent.
OVERTON and HARDING, JJ., concur.
NOTES
[1] Because we approve the district court's reversal of summary judgment, we need not address the subordinate issue regarding the identity and effect of the declaration of trust referred to in the First Nationwide bank account title.
[2] Section 732.502, Florida Statutes (1989), provides:

Every will must be in writing and executed as follows:
(1)(a) Testator's signature. 
1. The testator must sign the will at the end; or
2. The testator's name must be subscribed at the end of the will by some other person in the testator's presence and by his direction.
(b) Witnesses.  The testator's:
1. Signing, or
2. Acknowledgment:
a. That he has previously signed the will, or
b. That another person has subscribed the testator's name to it, must be in the presence of at least two attesting witnesses.
(c) Witnesses' signatures.  The attesting witnesses must sign the will in the presence of the testator and in the presence of each other.
(2) Any will, other than a holographic or nuncupative will, executed by a nonresident of Florida, either before or after this law takes effect, is valid as a will in this state if valid under the laws of the state or country where the testator was at the time of execution. A will in the testator's handwriting that has been executed in accordance with subsection (1) shall not be considered a holographic will.
(3) No particular form of words is necessary to the validity of a will if it is executed with the formalities required by law.
(4) A codicil shall be executed with the same formalities as a will.