766 So.2d 229 (2000)
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Appellant,
v.
SOUTHEAST DIAGNOSTICS, INC., Appellee.
No. 4D99-0609.
District Court of Appeal of Florida, Fourth District.
February 2, 2000.
John H. Richards and Warren Kwavnick of Cooney, Mattson, Lance, Blackburn, Richards & O'Connor, P.A., Fort Lauderdale, for appellant.
Harley N. Kane of Greenspan & Kane, Boca Raton, for appellee.
HAZOURI, J.
The county court has certified a question of great public importance to this court pursuant to Florida Rule of Appellate Procedure 9.160(b) which we rephrase as follows:
IS AN INSURER REQUIRED BY SECTION 627.736(7)(a)[1], FLORIDA *230 STATUTES TO OBTAIN A MEDICAL REPORT BASED UPON A PHYSICAL EXAMINATION OF AN INSURED BEFORE IT MAY WITHDRAW PERSONAL INJURY PROTECTION BENEFITS?
We have accepted jurisdiction pursuant to Florida Rules of Appellate Procedure 9.030(b)(4)(a) and 9.160(d). We answer the question in the negative.
Melvin Adler (Adler) was injured in a car accident and underwent a nerve conduction test at Southeast Diagnostics, Inc. (Southeast). Adler's treating physician requested the nerve conduction test and was paid by Nationwide Mutual Fire Insurance Company (Nationwide) for treatment rendered to that point. Adler was insured for personal injury protection (PIP) benefits under an insurance policy issued by Nationwide. Nationwide obtained a report from a physician licensed under the same statutory chapter as the treating physician stating that the test performed by Southeast was medically unnecessary. In preparing this report, the physician reviewed Adler's medical records but did not conduct a physical examination of Adler. Based on the physician's report, Nationwide denied payment for the diagnostic test.
Adler assigned his right to PIP benefits under the Nationwide policy to Southeast. Southeast then initiated a two-count complaint against Nationwide, seeking monetary damages and a declaration that Nationwide was required to provide PIP benefits for the Southeast treatment. Count I, the damages claim, was referred to arbitration pursuant to section 627.736(5), Florida Statutes (1995), and the arbitration was stayed pending a ruling on Count II, the declaratory judgment claim.
Southeast filed a motion for summary judgment on Count II asserting that section 627.736(7)(a) requires that the PIP insurer must obtain a report based upon a physical examination of the insured before it may withdraw benefits. Nationwide asserted that there was no requirement under 627.736(7)(a) that the medical report had to be based upon a physical examination of the insured. The trial court granted Southeast's motion for summary judgment and certified the issue to this court as a matter of great public importance.
In the legislative session of 1987, section 627.736(7)(a) was amended to add the following language:
An insurer may not withdraw payment of a treating physician without the consent of the injured person covered by the personal injury protection, unless the insurer first obtains a report by a physician licensed under the same chapter as the treating physician whose treatment authorization is sought to be withdrawn, stating that the treatment was not reasonable, related, or necessary.
Prior to July 4, 1987, the effective date of the amendment to section 627.736(7)(a), there was neither a statutory nor contractual limitation regarding the withdrawal of PIP payments under a contract of insurance. We can find no language in the amendment that requires the medical report to be based upon a physical examination of the insured. Without express language from the legislature, there is no reason to conclude that a physical examination is required. We can envision many instances in which a competent physician upon reviewing medical records could conclude without the benefit of a physical examination that a treatment or test was not "reasonable, related, or necessary." If *231 we follow Southeast's reasoning to its logical conclusion, every time a treating physician to whom a PIP carrier has paid benefits either conducted a diagnostic test or referred an insured for diagnostic testing, no matter how unconventional or medically unsound, a physical examination would be required before the payment could be refused.
The legislature is assumed to have expressed its intent through the words found in the statute. If the language of a statute is clear and unambiguous, the legislative intent must be derived from the words used without involving construction or speculating as to what the legislature intended. See Zuckerman v. Alter, 615 So.2d 661, 663 (Fla.1993). If the statute is clear and unambiguous, the court is not free to add words to steer it to a meaning which its plain wording does not supply. See James Talcott, Inc. v. Bank of Miami Beach, 143 So.2d 657, 659 (Fla. 3d DCA 1962). The court is also not free to edit statutes or to add requirements that the legislature did not include. See Meyer v. Caruso, 731 So.2d 118, 126 (Fla. 4th DCA 1999). We reverse the trial court's granting of the summary judgment on behalf of Southeast and remand for further proceedings consistent with this opinion.
KLEIN, J., concurs.
FARMER, J., concurs specially with opinion.
FARMER, J., concurring.
If I were going to rephrase the certified question of the County Court, I would not write it as the majority has done. To my mind the essential issue in this case does not involve a PIP insurer who sought to withdraw payment of PIP benefits. What it does involve, as I see it, is whether payment for the benefits should even be started in the first place. As I disagree with the County Court's decision that, under the statute,[2] the PIP insurer is required to make payment of this particular medical provider's bill, however, I concur in the reversal.
The majority has set out the controlling statute in footnote 1. The critical sentence is:
"An insurer may not withdraw payment of a treating physician without the consent of the injured person covered by the personal injury protection, unless the insurer first obtains a report by a physician licensed under the same chapter as the treating physician whose treatment authorization is sought to be withdrawn, stating that treatment was not reasonable, related, or necessary." [e.s.]
This provision plainly applies only to payments to a treating physician but not to other kinds of medical providers. Its import, moreover, turns on the meaning of the word withdraw.
Before assaying what the legislature meant in using the term withdraw, I pause to consider what words the drafters might have employed instead. They might, for example, have said "an insurer may not make [e.s.] payment ...," or, more simply "an insurer may not pay [e.s.]...." In these hypothetical versions there would be no doubt that a physical examination and report are conditions precedent to any payment of a physician's bill under the PIP statute.
In the statute in question, however, the drafters have made the physical examination and report requirement depend on the term withdraw. If they had intended that the requirement of a prior physical examination must apply to any payment by an insurer to a physician they would have used one of the two versions I have suggested. Because they used withdraw in place of these alternative locations, it is obvious to me that they did not intend that the physical examination requirement apply to a refusal to make any payment to a physician, especially in the first instance. *232 In short, the term has a narrower application.
Words used in statutes must be given their plain and ordinary meaning, unless the legislature has specifically defined them, or a clear meaning to the contrary otherwise appears. Green v. State, 604 So.2d 471 (Fla.1992). The relevant plain and ordinary meaning of withdraw is "to remove from consideration or participation." See AMERICAN HERITAGE DICTIONARY 2050 (3rd ed.1992). Applying the common and ordinary meaning to this statutory term, I think it is obvious that the legislature meant this sentence to apply only when the insurer has previously authorized the services of a particular physician by paying the initial and any subsequent bills, but later seeks to discontinue payment for future services by that physician.
The statute thus suggests as its purpose an aim to protect the reasonable expectations of both injured victim and physician. Once an insurer has initially approved the services of the physician as reasonably related to a covered claim and authorizes payment, both the insured and the physician reasonably expect continuing payment for the anticipated and customary course of services for the condition suffered by the patient. Such benefits ought not be withdrawn solely on the insurer's unilateral decision. In order to effect a withdrawal of benefits once started, the statute requires that the insurer receive a report based on a physical examination by a physician of the same specialty.
In this case the trial court should have denied the claim. Initially, it is apparent to me that the provider is very likely not even a physician and therefore not within the ambit of this statute. The physical examination requirement applies only to a withdrawal of a physician's services, and not to any other kind of provider. Even if this plaintiff did qualify as a physician, moreover, the insurer was not attempting to discontinue paying for services previously authorized by a physician but was instead simply denying an initial claim for payment by a provider whose bills it had not previously approved and paid. For these reasons I concur in the reversal.
NOTES
[1] Section 627.736(7)(a), Florida Statutes (1995), provides:

Whenever the mental or physical condition of an injured person covered by personal injury protection is material to any claim that has been or may be made for past or future personal injury protection insurance benefits, such person shall, upon the request of an insurer, submit to mental or physical examination by a physician or physicians. The costs of any examinations requested by an insurer shall be borne entirely by the insurer. Such examination shall be conducted within the municipality of residence of the insured or in the municipality where the insured is receiving treatment. If the examination is to be conducted within the municipality of residence of the insured and if there is no qualified physician to conduct the examination within such municipality, then such examination shall be conducted in an area of the closest proximity to the insured's residence. Personal protection insurers are authorized to include reasonable provisions in personal injury protection insurance policies for mental and physical examination of those claiming personal injury protection insurance benefits. An insurer may not withdraw payment of a treating physician without the consent of the injured person covered by the personal injury protection, unless the insurer first obtains a report by a physician licensed under the same chapter as the treating physician whose treatment authorization is sought to be withdrawn, stating that the treatment was not reasonable, related, or necessary.
[2] See § 627.736(7)(a), Fla. Stat. (1997).