934 So.2d 1276 (2006)
V.K.E., etc., Petitioner,
v.
STATE of Florida, Respondent.
No. SC05-1176.
Supreme Court of Florida.
July 6, 2006.
*1277 James S. Purdy, Public Defender and Marvin F. Clegg, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, Kristen L. Davenport and Kellie A. Nielan, Assistant Attorneys General, Daytona Beach, FL, for Respondent.
ANSTEAD, J.
In this case, we consider whether the Legislature intended for certain criminal statutory fees and surcharges to apply to juveniles in juvenile delinquency proceedings. In the decision below, the Fifth District Court of Appeal, noting that it was bound by its prior decision in S.S.M. v. State, 898 So.2d 84 (Fla. 5th DCA 2004), upheld the imposition of such surcharges in juvenile delinquency proceedings. V.K.E. v. State, 902 So.2d 343, 344 (Fla. 5th DCA 2005). The court certified the issue to us as one of great public importance: "Does a trial judge have the power and authority to impose on juveniles in a juvenile delinquency proceeding, the mandatory surcharges set forth in sections 938.08 and 93[8].085?" Id. at 344.[1] We have discretionary jurisdiction and granted review. See art. V, § 3(b)(4), Fla. Const. For the reasons that follow, we answer *1278 "no" to the certified question and approve of the views and analysis set out in the concurring opinion of Judge Sharp. We therefore quash the district court's decision in V.K.E.

FACTUAL AND PROCEDURAL BACKGROUND
Petitioner V.K.E., an eleventh grade high school student and a juvenile, was involved in an altercation with another student and entered a plea of nolo contendere to a delinquency petition asserting the commission of a simple battery under the provisions of section 784.03, Florida Statutes (2001), a misdemeanor. The trial court withheld adjudication of delinquency, placed V.K.E. on probation, and ordered her, among other things, to pay $852.66 in restitution, $140 in attorneys fees, and two surcharges$201 in domestic violence costs and $151 to the rape crisis fund within sixty days. V.K.E. appealed the imposition of the surcharges. The district court affirmed, relying on its prior decision in S.S.M., and certified the question quoted above. V.K.E., 902 So.2d at 344.

ANALYSIS
We find the analysis set out in Judge Sharp's separate opinion below provides a reliable guide to legislative intent and the correct answer to the certified question.[2] We further conclude that the overriding indications of legislative intent discussed by Judge Sharp should control the outcome here: first, the Legislature has created a juvenile justice system as a totally separate and distinct rehabilitative alternative to the punitive criminal justice system, and not as a subset of that system with all of its attendant punitive measures and costs;[3] second, the Legislature has expressly provided in certain instances for the taxation of criminal justice costs and surcharges against delinquents but has not done so here;[4] and third, the Legislature has actually spoken on the issue before us by expressly providing that court fees and costs should not ordinarily be imposed in juvenile proceedings. Moreover, we conclude that a contrary holding would open the door to the assessment in juvenile proceedings of the unrelated costs, fees, and surcharges provided for in the adult criminal system without a clear legislative mandate to do so. This in turn would impair the ability of the juvenile system to focus on and serve its legislatively mandated rehabilitative function.
Because Judge Sharp has fully and cogently articulated these principles of legislative intent, we adopt her analysis as our own and set it out in full:
I am bound by this court's opinion in S.S.M. v. State, 898 So.2d 84 (Fla. 5th *1279 DCA 2004), but were that not the case I would have resolved this issue differently. In this special concurring opinion, I write to explain my reasons for disagreeing with S.S.M.

In S.S.M., a child was assessed a $201.00 surcharge pursuant to section 938.08, Florida Statutes. She pled guilty to two counts of battery, first degree misdemeanors. In this case, V.K.E. pled guilty to a charge of simple battery, a first degree misdemeanor, and was surcharged $201.00 pursuant to section 938.08, Florida Statutes and $151.00 pursuant to section 938.085, Florida Statutes.
Sections 938.08 and 938.085 are part of the "general" adult criminal statutes contained in Chapter 938. They belong to Part II of that Chapter entitled "Mandatory Costs in Specific Types of Cases." That Part imposes various charges, sometimes described as "costs" or "surcharges" on persons who have violated specific criminal statutes. Funds raised from these surcharges or costs are designated to go to various state and local programs; i.e., the Emergency Medical Services Trust Fund; the Criminal Justice Standards and Training Trust Fund; the Brain and Spinal Cord Injury Rehabilitation Trust Fund; and the County Alcohol and Other Drug Abuse Trust Fund; and the Department of Children and Family Services Child Advocacy Trust Fund for the Florida Network of Children's Advocacy Centers, Inc.
In the case of section 938.08, $85.00 of the surcharge goes to the Domestic Violence Trust Fund, $1.00 to the Clerk of the Court as a service charge, and the balance to the county to defray costs of incarcerating persons sentenced under section 741.238 (minimum term of imprisonment for domestic violence). In the case of section 938.085, the surcharge goes to the Rape Crisis Program Trust Fund, and $1.00 to the Clerk of Court as a service charge.
In both this case and S.S.M., the juveniles against whom the surcharges were assessed are young females. Neither case involved domestic violence or rape. Incongruously, they appear to be persons in the "victim" category for the general benefit of whom these surcharges are being imposed.
In addition to Part II, Chapter 938 contains Part I, Mandatory Costs in All Cases. For a violation of a state criminal statute or municipal or county ordinance (to benefit the Additional Cost Clearing Trust Fund), section 938.01 imposes a $3.00 court cost and section 938.03 imposes $50.00 as an additional cost for the violation of any criminal law, for the benefit of the Crimes Compensation [T]rust Fund. However, this statute specifically was revisited by the Legislature and made expressly applicable to delinquency proceedings. It reads:
Any person pleading guilty or nolo contendere to, or being convicted of or adjudicated delinquent for, any felony, misdemeanor, delinquent act, or criminal traffic offense under the laws of this state, or the violation of any municipal or county ordinance .... (emphasis added)
Part I also contains two other sections requiring the imposition of court costs. For the violation of any criminal offense, section 938.05 imposes from $50.00 to $200.00, for the benefit of the Fine and Forfeiture Fund, and section 938.06 imposes, as a court cost, a $20.00 surcharge on any fine, for the benefit of the Crime Stoppers Trust Fund.

*1280 In addition, Part IV provides for discretionary assessment of costs in specific types of cases to benefit alcohol and drug abuse programs, the Operating Trust Fund of the Department of Law Enforcement, and costs of prosecution upon conviction including investigative costs and attorneys fees for public defenders. Chapter 939 also contains additional cost assessment statutes, applicable if a person violates any kind of criminal statute or ordinance of this state. The "court costs" of $65.00 must be used to fund innovations to supplement state funding for the elements of the state courts system, to assist counties to provide legal aid programs, to fund public law libraries, and to support teen court programs, juvenile assessment centers, and other juvenile alternative programs.
The rationale used in S.S.M., to justify imposition of the surcharge pursuant to section 938.05, was that the statute assesses this surcharge for a violation of section 784.03 (battery statute), and section 985.03(58) defines "violation of law" or a "delinquent act" as a "violation of any law of this state." [n.1]
[n.1] Section 985.03(58) provides:
`Violation of law' or `delinquent act' means a violation of any law of this state, the United States, or any other state which is a misdemeanor or a felony or a violation of a county or municipal ordinance which would be punishable by incarceration if the violation were committed by an adult.
This definition comes from Chapter 985, the Chapter which deals with juvenile delinquency. In my view, it has no relevancy to Chapter 938. Indeed, the statute expressly provides that the Chapter 985 definitions apply only "when used in this Chapter;" i.e., Chapter 985.
Section 985.228(6), Florida Statutes, provides further:
An adjudication of delinquency by a court with respect to any child who has committed a delinquent act or violation of law shall not be deemed a conviction; nor shall the child be deemed to have been found guilty or to be a criminal by reason of that adjudication; nor shall that adjudication operate to impose upon the child any of the civil disabilities ordinarily imposed by or resulting from conviction to disqualify or prejudice the child in any civil service application or appointment, with the exception of use of records of proceedings under this part as provided in s. 985.05(a).
Section 985.233(5)(b) also provides the court must impose either an adult sanction or a juvenile sanction, but not a combination.
If, however, the rationale of S.S.M. is accepted, there is no logical limit to assessing juveniles being prosecuted under Chapter 985, with not only the surcharges under sections 938.08 and 938.085, but all, if not many, of the surcharges or court costs set forth in Chapter 938, outlined above, because all of those statutes impose "court costs" or surcharges for funding state and local law enforcement programs based on the fact that a person has violated a state criminal law or municipal ordinance or criminal traffic offense. If sections 938.08 and 938.085 are applicable to juvenile delinquency cases, then all of the costs and assessments provided for in Chapter 938, for the adult penal system, are logically applicable to juveniles.
I do not think that this is what the Legislature intended. The statutory scheme sets up a separate procedure *1281 and system for handling juveniles who violate the state/county/city criminal laws, different and apart from the adult system. The stated public policy underlying Chapter 985 is to protect children involved in the juvenile justice system, and to insure their care, safety, treatment, education and rehabilitation. [n.2]
[n.2] For example, section 985.02(1) provides:
985.02. Legislative intent for the juvenile justice system.
(1) General protections for children. It is a purpose of the Legislature that the children of this state be provided with the following protections:
(a) Protection from abuse, neglect, and exploitation.
(b) A permanent and stable home.
(c) A safe and nurturing environment which will preserve a sense of personal dignity and integrity.
(d) Adequate nutrition, shelter, and clothing.
(e) Effective treatment to address physical, social, and emotional needs, regardless of geographical location.
(f) Equal opportunity and access to quality and effective education, which will meet the individual needs of each child, and to recreation and other community resources to develop individual abilities.
(g) Access to preventive services.
(h) An independent, trained advocate when intervention is necessary, and a skilled guardian or caretaker in a safe environment when alternative placement is necessary.
(i) Gender-specific programming and gender-specific program models and services that comprehensively address the needs of a targeted gender group.
It should not follow, without a solid basis, that adult criminal sanctions be imposed on juvenile offenders.
Chapter 985 disfavors detention and limits harsher sanctions if other alternatives are available. Yet, sections 938.08 and 938.085 make the payment of substantial funds by the juvenile a condition of not being placed in detention. Most children are not wage earners nor are they expected to be. If a child needs large sums of money to avoid detention, the burden will fall on the child's parents or guardians.
Although parents and guardians have been tasked with payment of costs or expenses for delinquent children, as well as payment of restitution in certain situations under chapter 985, those instances have been specifically provided for and defined by the Legislature, in Chapter 985. See § 985.231(9), Fla. Stat. They are quite different than the scheme devised in Chapter 938. For example, sections 985.215 and 985.231(10) allow the court to impose a fee of $5.00 per day payable to the Department of Juvenile Justice to offset the cost of care, support, and maintenance of the child against the parents or guardians, unless they are indigent. Section 985.231 requires the court to devise a penalty component such as restitution in money or kind for an adjudicated delinquent child. Restitution ordered may not exceed an amount the child and the parent or guardian reasonably can be expected to make or pay. And, parents or guardians who are not indigent can be ordered to pay for attorney's costs, as provided for in section 938.29. See § 985.203, Fla. Stat.

*1282 In the past, this court has adhered to the theory that unless the Legislature expressly makes a cost or surcharge imposed by Chapter 38[sic] applicable to juvenile delinquency cases, such costs or surcharges are not applicable to juveniles. See P.P. v. State, 671 So.2d 894 (Fla. 5th DCA 1996). That case held that additional "costs" of $50.00 for the benefit of the Crimes Compensation Trust Fund should be assessed against all persons, including delinquents, based on the express language used in the statute, section 960.20(1) [renumbered 938.03], which made it clear the Legislature intended them to be assessed in juvenile cases.[n.3]
[n.3] As noted above, that statute provides:
Any person pleading guilty or nolo contendere to, or being convicted of or adjudicated delinquent for, any felony, misdemeanor, delinquent act, or criminal traffic offense under the laws of this state, or the violation of any municipal or county ordinance which adopts by reference any misdemeanor under state laws, shall pay as an additional cost in the case, in addition and prior to any other cost required to be imposed by law, the sum of $50.00 ... (emphasis added)
Both P.P. and J.A. v. State, 633 So.2d 108 (Fla. 2d DCA 1994), noted that section 985.221, a statute passed prior to section 938.03, provides that in proceedings under Chapter 985, "court fees shall not be charged against nor witness fees allowed to, any party to a delinquency petition or any parent or legal guardian." However, the courts held that the older statute had been partially overturned by section 938.03 because of the express language used in the newer statute.
One could make a semantical argument that court "fees" are not "court costs" or "surcharges" and thus section 985.221 never prohibited the imposition of surcharges or court costs under Chapter 938. None of these terms is defined in Chapter 985 and Chapter 938 uses the terms interchangeably. In my view, that leads to the same logical dilemma left by S.S.M. Are all or most of the costs and surcharges, including those specified in 938.08 and 938.085, provided for in Chapter 938 applicable in juvenile delinquency cases simply because they involve violations of state, county, or municipal law?
Because the two penal systems for handling adults and juveniles are so different and guided by such different philosophies and goals, I believe the better answer is that unless the Legislature expressly makes an adult sanction, cost or surcharge expressly applicable to the juvenile system, it should not be applicable. Sections 938.08 and 938.085 make no reference to delinquency proceedings. Thus I would have concluded that the trial court erred in this juvenile case, in imposing the surcharges against V.K.E., pursuant to sections 938.05 and 938.085.
V.K.E., 902 So.2d at 344-47 (Fla. 5th DCA 2005) (Sharp, J., concurring specially).

CONCLUSION
In sum, we agree with the reasoning of Judge Sharp and her conclusion that the Legislature has demonstrated its awareness of its broad authority to provide for the taxation of costs, fees, and surcharges in both adult and juvenile delinquency proceedings, but has not provided for the assessment of costs under sections 938.05 and 938.085 in juvenile delinquency proceedings. Accordingly, we answer the certified *1283 question in the negative, quash the decision of the district court, and remand for further proceedings consistent herewith.
It is so ordered.
LEWIS, C.J., and PARIENTE, and QUINCE, JJ., concur.
PARIENTE, J., specially concurring with an opinion, in which ANSTEAD, J., concurs.
CANTERO, J., dissents with an opinion, in which WELLS and BELL, JJ., concur.
BELL, J., dissents with an opinion.
PARIENTE, J., specially concurring.
An eleventh grade female high school student punched another student in the face and broke the student's nose, then pled no contest to simple battery. The trial court withheld adjudication of delinquency and placed V.K.E. on juvenile probation. She was ordered to pay restitution of $852.66 and two statutory surcharges for domestic violence programs and rape crisis centers. The issue is whether the Legislature intended juveniles to be subject to these surcharges applicable to adult offenders. Because I do not discern a clear expression of legislative intent for the adult surcharges to apply to juveniles, I agree with the majority that these statutory surcharges are not authorized. The majority has reached the correct result as a matter of statutory interpretation and has acted in accord with the purposes of juvenile sentencing as set forth by the Legislature.
Unlike the $50 in costs for the Crimes Compensation Trust Fund authorized by section 938.03(1), Florida Statutes, sections 938.08 and 938.085 do not expressly authorize the $201 and $151 surcharges for domestic violence programs and rape crisis centers in juvenile delinquency cases. The costs in section 938.03(1) apply to "[a]ny person pleading guilty or nolo contendere to, or being convicted of or adjudicated delinquent for, any felony, misdemeanor, delinquent act, or criminal traffic offense," and to "[a]ny person whose adjudication is withheld." (Emphasis supplied.) In contrast, nothing in sections 938.08 and 938.085 clearly evinces legislative intent to extend the surcharges to juvenile delinquency proceedings, apart from the fact that juveniles as well as adults can "plead[ ] guilty or nolo contendere to, or [be] found guilty of" one of the enumerated offenses. I cannot presume from the sparse statutory language in these provisions, set against the more complete expression of legislative intent in section 938.03(1), that the Legislature intended to place the burden of funding domestic violence programs and rape crisis centers on juvenile delinquents, some of whom may have committed offenses unrelated to either domestic violence or rape.
In his dissenting opinion, Justice Cantero views the reliance on the difference in statutory language as an incorrect application of the principle, expressio unius est exclusio alterius. Neither the majority here nor Judge Sharp in her concurring opinion below, which the majority adopts, explicitly rely on expressio unius. I believe they are instead applying an in pari materia construction by construing these related statutory provisions in harmony with one another. "The doctrine of in pari materia requires that statutes relating to the same subject or object be construed together to harmonize the statutes and to give effect to the Legislature's intent." Zold v. Zold, 911 So.2d 1222, 1229 *1284 (Fla.2005). The use of language explicitly encompassing juvenile delinquents in section 938.03(1) and the absence of similar language in sections 938.08 and 938.085 suggest that the Legislature intended a distinction. Courts frequently look to other provisions to conclude that the Legislature "knows how to" accomplish what it has omitted in the enactment in question. See e.g., Costarell v. Florida Unemployment Appeals Comm'n, 916 So.2d 778, 783 (Fla.2005).
At the very least, the difference in the statutory language indicates ambiguity, which under the rules of statutory construction we should resolve by seeking other indications of legislative intent. See Blanton v. City of Pinellas Park, 887 So.2d 1224, 1230 (Fla.2004) (stating that only when statutory language is ambiguous will the Court resort to rules of statutory construction to discern legislative intent). These other indications appear in statutory provisions articulating the purposes of the juvenile delinquency system and in section 985.221, Florida Statutes, which prohibits court fees in delinquency proceedings.
Both the majority and the dissent construe the surcharges as a form of punishment, but disagree on whether punishment of this nature serves the purposes of the juvenile justice system. The majority looks to the system's rehabilitative purposes, while Justice Cantero focuses on provisions authorizing punishment of juvenile delinquents. The resolution lies somewhere in the middle. Chapter 985, Florida Statutes, which governs juvenile delinquency proceedings, does have a punitive component, but one which must be individually tailored to the needs of the child, consistent with a second important purpose of the juvenile justice system, which is to rehabilitate the child. See J.A.S. v. State, 705 So.2d 1381, 1386 (Fla.1998) (noting that juvenile offenders are not held to be criminals and are considered rehabilitatable) (quoting In re C.J.W., 377 So.2d 22, 24 (Fla.1979)).
Section 985.01 provides that the purposes of the chapter are, inter alia:
(c) To ensure the protection of society, by providing for a comprehensive standardized assessment of the child's needs so that the most appropriate control, discipline, punishment, and treatment can be administered consistent with the seriousness of the act committed, the community's long-term need for public safety, the prior record of the child, and the specific rehabilitation needs of the child, while also providing whenever possible restitution to the victim of the offense.
....
(e)1. To assure that the adjudication and disposition of a child alleged or found to have committed a violation of Florida law be exercised with appropriate discretion and in keeping with the seriousness of the offense and the need for treatment services, and that all findings made under this chapter be based upon facts presented at a hearing that meets the constitutional standards of fundamental fairness and due process.
This language looks to punishment not as an end in itself, but as a means to protect society. And the sanction imposed should be geared to the "specific rehabilitation needs of the child, while also providing whenever possible restitution to the victim of the offense." Legislative intent that punishment be individualized is also evident in section 985.228(4), which authorizes as a penalty component of juvenile *1285 probation "nonresidential punishment appropriate to the offense." The goals of individualized treatment, rehabilitation, and punishment are entirely unrelated to the funding of domestic violence programs and rape crisis centers, which broadly focus on addressing the prevention of violence and its harmful consequences throughout the state.
The word that appears perhaps most often in the provisions of chapter 985 setting out the chapter's purposes and the court's disposition options is "appropriate." Imposing surcharges that fund domestic violence programs and rape crisis centers is not appropriate punishment, in the sense of proportionate or commensurate with the offense, for a high school student who has committed simple battery in a school fight. It certainly does not directly foster the goal of rehabilitation.
Finally, I agree that section 985.221, which prohibits court fees from being imposed in juvenile delinquency proceedings, supports the majority. In his dissenting opinion, Justice Cantero discerns from precedent and dictionary definitions that a surcharge or cost can be distinguished from a fee. However, the Legislature has not defined the terms so that we can be sure that it intended this distinction to be applied to sections 938.08, 938.085, and 985.221. In the absence of express language authorizing the "surcharge" in section 938.08 and 938.085 in delinquency proceedings, section 985.221 is an additional indication that imposition of the surcharge on juvenile delinquents is contrary to legislative intent.
It is my hope that when the Legislature acts in the area of juvenile justice, it seeks to further the goals of the juvenile delinquency system that promote rehabilitation and personal responsibility. If the majority has misconstrued legislative intent, the Legislature can clarify its intent regarding imposition of these surcharges on juveniles by amending the statutes. In the interim, I join the majority in concluding that, consistent with the emphasis on individualized treatment in chapter 985, these surcharges were not intended to be imposed on juveniles.
ANSTEAD, J., concurs.
CANTERO, J., dissenting.
I would apply the plain meaning of the statutes and answer "yes" to the certified question. I would therefore approve the district court's decision in this case, see V.K.E. v. State, 902 So.2d 343, 344 (Fla. 5th DCA 2005), as well as other courts that have upheld imposition of statutory surcharges in delinquency proceedings. See, e.g., State v. J.C., 916 So.2d 847 (Fla. 2d DCA 2005); S.L.G. v. State, 912 So.2d 613 (Fla. 5th DCA 2005); S.S.M. v. State, 898 So.2d 84 (Fla. 5th DCA 2004). As these courts consistently have found, the statutes at issue are unambiguous and therefore must be applied as written.
The majority instead concludes that sections 938.08 and 938.085, Florida Statutes (2001, 2003), do not apply in juvenile delinquency proceedings. Majority op. at 1282. It relies on "the overriding indications of legislative intent discussed by Judge Sharp" in her specially concurring opinion in V.K.E. Majority op. at 1278. The legislative intent is far from clear, however, and certainly is insufficient to trump the plain language of the statutes. Therefore, I must dissent.
In the following discussion, I will (A) analyze the plain meaning of the statutes and conclude that they apply to juvenile delinquency proceedings; and (B) address *1286 the majority's arguments for a contrary interpretation.

A. The Plain Meaning of the Statutes
The surcharges at issue were mandated under sections 938.08 and 938.085, Florida Statutes (2001, 2003), which state in relevant part:
938.08 Additional cost to fund programs in domestic violence.In addition to any sanction imposed for a violation of ... s. 784.03, ... the court shall impose a surcharge of $201. Payment of the surcharge shall be a condition of probation, community control, or any other court-ordered supervision....
938.085 Additional cost to fund rape crisis centers.In addition to any sanction imposed when a person pleads guilty or nolo contendere to, or is found guilty of, regardless of adjudication, a violation of ... s. 784.03, ... the court shall impose a surcharge of $151. Payment of the surcharge shall be a condition of probation, community control, or any other court-ordered supervision.
The issue is whether sections 938.08 and 938.085 apply in juvenile delinquency proceedings. This issue is purely one of statutory interpretation. Although legislative intent guides our analysis, see Knowles v. Beverly Enters.-Fla., Inc., 898 So.2d 1, 5 (Fla.2004), to determine that intent we look first to the statute's plain meaning. State v. Dugan, 685 So.2d 1210, 1212 (Fla. 1996). "The cardinal rule of statutory construction is `that a statute should be construed so as to ascertain and give effect to the intention of the Legislature as expressed in the statute.'" City of Tampa v. Thatcher Glass Corp., 445 So.2d 578, 579 (Fla.1984) (emphasis added) (quoting Deltona Corp. v. Fla. Pub. Serv. Comm'n, 220 So.2d 905, 907 (Fla.1969)). "[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction...." Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (Fla.1931)). "[T]he legislative intent must be derived from the words used without involving incidental rules of construction or engaging in speculation as to what the judges might think that the legislators intended or should have intended." Tropical Coach Line, Inc. v. Carter, 121 So.2d 779, 782 (Fla.1960). "[T]he statute must be given its plain and obvious meaning." Holly, 450 So.2d at 219 (quoting McRainey, 137 So. at 159). Thus, the statute's text is the most reliable and authoritative expression of the Legislature's intent.
Under the plain language of the statutes in question, sections 938.08 and 938.085, they apply to juvenile delinquency proceedings. Section 938.08 states, without exception, that "[i]n addition to any sanction imposed for a violation of . . . s. 784.03, . . . the court shall impose a surcharge of $201." (Emphasis added.) The statute thus requires the trial court to impose this surcharge on anyone, juvenile or otherwise, who violates section 784.03 (or any of the other statutes enumerated in section 938.08). This language is clear, definite, and unambiguous. Juveniles, as well as adults, can violate the law. Because V.K.E. pled nolo contendere to simple battery under section 784.03, under section 938.08 she committed a "violation of ... s. 784.03."
That the court withheld adjudication of delinquency does not change the analysis. As one court has said, "[i]n a juvenile proceeding, a finding that the child has *1287 committed a delinquent act or violation of law occurs when the court withholds adjudication of delinquency and when the court adjudicates [a] child delinquent." State v. Menuto, 912 So.2d 603, 606 (Fla. 2d DCA 2005) (emphasis added) (citing § 985.228(4), Fla. Stat. (2002)). Therefore, notwithstanding the trial court's withholding of adjudication in this case, V.K.E. committed a "violation of law."
Section 938.085 contains similar language. It provides that "[i]n addition to any sanction imposed when a person pleads ... nolo contendere to ... a violation of ... s. 784.03, ... the court shall impose a surcharge of $151." (Emphasis added.) In this case, the State originally charged V.K.E. with felony battery under section 784.041, Florida Statutes (2002). However, the State and V.K.E. later agreed to a plea bargain. To avoid a possible conviction of felony battery, she pled nolo contendere to a violation of section 784.03simple battery. This plea placed her within the ambit of section 938.085 because she pled "nolo contendere to ... a violation of ... s. 784.03." The statute requires the trial court to impose this $151 surcharge on anyone who pleads guilty or nolo contendere to a violation of section 784.03 (or any of the other statutes enumerated in section 938.08). The statute contains no exceptions for juveniles.
In addition, sections 938.08 and 938.085 explicitly state that "[p]ayment of the surcharge shall be a condition of probation. . . or any other court-ordered supervision." (Emphasis added.) The trial court's disposition order did impose the surcharges as a condition of probation. The order includes, among the twenty-three conditions of V.K.E.'s probation, payment of the surcharges.[5] The order reflects the language in sections 938.08 and 938.085 that "[p]ayment of the surcharge shall be a condition of probation."
Because the statutory language is clear and unambiguous, the analysis must end there. The plain meaning of sections 938.08 and 938.085 controls. As a majority of this Court recently noted, "[w]hile this may seem simplistic, it is nevertheless what is required." Knowles, 898 So.2d at 11-12 (Cantero, J., concurring, with three other justices joining). The majority relies heavily on legislative intent, see majority op. at 1278, yet "the legislature is assumed to have expressed its intent through the words found in a statute." Zuckerman v. Alter, 615 So.2d 661, 663 (Fla.1993). When that "language ... is clear and unambiguous, the legislative intent must be derived from the words used without involving rules of construction or speculating as to what the legislature intended." Id. (emphasis added). Thus, I conclude that a trial judge has the authority to impose the surcharges set forth in sections 938.08 and 938.085 on juveniles in delinquency proceedings.

B. Arguments for Disregarding the Plain Language
In adopting Judge Sharp's opinion as its own, the majority offers several grounds *1288 for disregarding the plain language of the statutes in question: (1) the Legislature created a separate juvenile justice system as a distinct rehabilitative alternative to the criminal justice system; (2) sections 938.08 and 938.085 do not specifically include delinquency proceedings; and (3) section 985.221, Florida Statutes (2004), prohibits the imposition of court fees in delinquency cases. I address each argument in turn below, and ultimately conclude that none justifies deviating from the plain language.

1. Juvenile System Separate from Criminal System
The majority endorses Judge Sharp's argument that the Legislature "set[ ] up a separate procedure and system for handling juveniles ... different and apart from the adult system." Majority op. at 1280-81 (quoting V.K.E., 902 So.2d at 346 (Sharp, J., concurring specially)). In this juvenile system (Chapter 985), Judge Sharp argues, the "stated public policy ... is to protect children ... and to insure their care, safety, treatment, education, and rehabilitation." Id. However, such "vague notions of a statute's `basic purpose' are ... inadequate to overcome the words of its text regarding the specific issue under consideration." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 220, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (emphasis omitted) (quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 261, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)).
The majority cannot reconcile this characterization of "public policy" with section 985.228(4), Florida Statutes (2001), which demonstrates that the purposes of the juvenile justice system go beyond "care, safety, treatment, education, and rehabilitation" to include punishment as well. The statute authorizes a judge to "enter an order stating the facts upon which its finding is based but withholding adjudication of delinquency and placing [the juvenile] in a probation program under the supervision of the department." Id. (emphasis added). It outlines the court's authority over juveniles, such as V.K.E., who are not adjudicated delinquent: "The court may, as a condition of the [probation] program, impose as a penalty component restitution in money or in kind, community service, a curfew ... or other nonresidential punishment appropriate to the offense." (Emphasis added.) This list is not exhaustive and leaves other sanctions within the court's discretion.
Moreover, whatever purposes one may infer from Chapter 985, they are "inadequate to overcome the words of its text." Knudson, 534 U.S. at 220, 122 S.Ct. 708. Section 985.228(4) does not preclude a court from imposing penalties on juveniles. Despite the "public policy underlying Chapter 985," majority op. at 1281 (quoting V.K.E., 902 So.2d at 346 (Sharp, J., concurring specially)), section 985.228(4) does not preclude a judge from imposing on juveniles the surcharges in sections 938.08 and 938.085.
Nevertheless, the majority, again quoting Judge Sharp, advances two additional policy arguments against the imposition of the surcharges. First, it claims that the surcharges bear no rational relationship to the delinquent act in this case. Second, it assumes that in future cases they could be counterproductive. Neither of these claims is sufficient to override the plain language of the statutes.
The majority first argues that these surcharges, which fund domestic violence and rape crisis programs, bear no rational relationship to the offense in this casesimple *1289 battery. See majority op. at 1278-79 (quoting V.K.E., 902 So.2d at 345 (Sharp, J., concurring specially)). This rationale implies that a surcharge that funds a program, such as one for domestic violence, cannot be imposed unless the offense triggering the surcharge relates to that program. No law supports this view, and such an interpretation would render several parts of sections 938.08 and 938.085 inapplicable even to adult offenses. Cf. Unruh v. State, 669 So.2d 242, 245 (Fla. 1996) ("[C]ourts should avoid readings that would render part of a statute meaningless."). Many of the offenses triggering the surcharges, enumerated in sections 938.08 and 938.085, are unrelated to rape, sexual assault, or domestic violence. See § 784.011, Fla. Stat. (2005) (assault); § 784.021, Fla. Stat. (2005) (aggravated assault); § 784.03, Fla. Stat. (2005) (battery); § 784.041, Fla. Stat. (2005) (felony battery). Several are inconsistent with the concept of domestic violence, see § 784.082, Fla. Stat. (2005) (assault or battery by person who is being detained in a prison, jail, etc.); § 784.048, Fla. Stat. (2005) (stalking), or the concept of rape, see § 784.085, Fla. Stat. (2005) (battery of a child by throwing, tossing, projecting, or expelling certain fluids or materials). Accepting Judge Sharp'snow the majority'sview would require us to prohibit the imposition of any surcharges, either upon a juvenile or an adult, when the offense is not directly related to the programs being funded. Yet sections 938.08 and 938.085 require that a court "shall impose" the surcharges at issue when they apply. This obligatory language indicates that the Legislature has deemed the surcharges appropriate even when the offense charged is unrelated to rape, sexual assault, or domestic violence.
The majority also adopts Judge Sharp's argument that, "[i]f sections 938.08 and 938.085 are applicable to juvenile delinquency cases, then all of the costs and assessments ... in Chapter 938 ... are logically applicable to juveniles." Majority op. at 1280 (quoting V.K.E., 902 So.2d at 346 (Sharp, J., concurring specially)). The majority also asserts that because most children are not wage earners, it is the parents who will often have to pay these surcharges. This contention resembles a claim that such a result would be unreasonable or ridiculous.
We will deviate from a statute's plain language when necessary to avoid an absurd result. "[N]o literal interpretation should be given that lends to an unreasonable or ridiculous conclusion ...." State v. Sullivan, 95 Fla. 191, 116 So. 255, 261 (1928). But this exception to the plain meaning rule is intended to be narrow. The United States Supreme Court, for example, "rarely invokes such a test to override unambiguous legislation." Barnhart v. Sigmon Coal Co., 534 U.S. 438, 459, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). The fact that the surcharges are imposed on juveniles, who often are not wage earners, cannot be considered unreasonable or ridiculous. A court may reasonably contemplate that a juvenile's parent or guardian can assist her in complying with an order to pay surcharges. Moreover, juveniles such as V.K.E. are not incapable of raising these funds themselves. In this case, the surcharges total $352, less than half of the $852.66 of restitution the court ordered (with which the majority apparently finds no problem). Thus, the imposition of the surcharges cannot be considered unreasonable or absurd.

2. Absence of Express Application to Delinquency Proceedings
The majority next claims that, unlike certain instances where the Legislature *1290 has expressly provided for the taxation of costs and surcharges against juveniles, sections 938.08 and 938.085 do not specify that they apply to delinquency proceedings. See majority op. at 1278. In particular, the majority relies on Judge Sharp's discussion of section 938.03, Florida Statutes (2003). See id. at 1279, 1282 (citing V.K.E., 902 So.2d at 345, 347 (Sharp, J., concurring specially)). Section 938.03 states in relevant part:
Crimes Compensation Trust Fund.
(1) Any person pleading guilty or nolo contendere to, or being convicted of or adjudicated delinquent for, any felony, misdemeanor, delinquent act, or criminal traffic offense under the laws of this state or the violation of any municipal or county ordinance which adopts by reference any misdemeanor under state law, shall pay as an additional cost in the case, in addition and prior to any other cost required to be imposed by law, the sum of $50. Any person whose adjudication is withheld shall also be assessed such cost.
(Emphasis added.) According to the majority, had the Legislature wanted the surcharges in sections 938.08 and 938.085 to apply to juveniles, it would have explicitly said so. See majority op. at 1278.
This argument alludes to a principle of statutory construction known as "expressio unius est exclusio alteriusthe mention of one thing implies the exclusion of another." Rotemi Realty, Inc. v. Act Realty Co., 911 So.2d 1181, 1187 (Fla.2005) (citing Grenitz v. Tomlian, 858 So.2d 999, 1002 (Fla.2003)). The Second District has concluded that the principle does not apply in this context. See State v. J.C., 916 So.2d 847, 849 (Fla. 2d DCA 2005) (rejecting the juveniles' argument that, because the Legislature did not expressly include juveniles in the surcharge statutes, it meant to exclude them). I agree.
We use principles of statutory construction to interpret statutes only when they are ambiguous. "[T]he rules of statutory construction are the means by which courts seek to determine legislative intent only when that intent is not plain and obvious enough to be conclusive." Knowles, 898 So.2d at 10 (emphasis added). "If the language of a statute is clear and unambiguous, the legislative intent must be derived from the words used without involving rules of construction or speculating as to what the legislature intended." Zuckerman, 615 So.2d at 663. As I have noted above, the language of sections 938.08 and 938.085 is clear and unambiguous, and its plain meaning controls.
Even if we were free to use the canons of statutory construction, the principle of expressio unius applies to the mention of things within the same statute, and usually within the same sentence. It does not apply where something is mentioned in one statute but not in another. One cannot infer from the Legislature's explicit application of section 938.03 to juvenile proceedings that the absence of such language in sections 938.08 and 938.085 reflects an intent not to apply those statutes to juvenile proceedings. Section 938.03 applies to certain specified areas: "any felony, misdemeanor, delinquent act, or criminal traffic offense." The principle of expressio unius permits the inference that it does not apply to categories not mentioned in that sentence. On the other hand, the language of sections 938.08 and 938.085 does not indicate that the statutes apply only to adults, or only in specified proceedings. Nor does either one specify that, for purposes of the statute, only adults can violate any of the enumerated *1291 provisions. Instead, they require, without special language, the imposition of these surcharges "for a violation of" or "when a person pleads guilty or nolo contendere to, or is found guilty of . . . a violation of" any of the enumerated offenses. See §§ 938.08, 938.085. This broad language contains no references to adults that would permit the inference that juveniles were intended to be excluded.
Justice Pariente argues that the majority and Judge Sharp are not applying the principle of expressio unius, but "are instead applying an `in pari materia' construction by construing these related statutory provisions in harmony with one another." Specially concurring op. at 1283. But as I noted above, we use canons of statutory construction only when statutes are ambiguous. See Knowles, 898 So.2d at 10; Zuckerman, 615 So.2d at 663. The language of sections 938.08 and 938.085 is clear. Justice Pariente uses the principle of in pari materia not to resolve an ambiguity, but to create one. See Gustafson v. Alloyd Co., 513 U.S. 561, 586, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (Thomas, J., dissenting) (arguing that the majority's application of the maxim noscitur a sociis to section 2(10) of the Securities Act of 1933 creates doubt, instead of reducing it, and arguing that the canon applies only in cases of ambiguity). As the argument goes, because section 938.03 refers to juveniles and sections 938.08 and 938.085 do not, it is now unclear (although it was not before) whether these statutes apply to juveniles. Then, by applying an in pari materia construction (or, as the majority does, the principle of expressio unius), this newly created ambiguity is resolved by using the same language that created it. I do not agree that the canons of construction can be used in the same breath to first create, and then resolve, an ambiguity.

3. Prohibition of Court Fees in Delinquency Cases
Finally, the majority claims that "the Legislature . . . expressly provid[ed] that court fees and costs should not ordinarily be imposed in juvenile proceedings." Majority op. at 1278. It endorses Judge Sharp's argument that section 985.221, Florida Statutes (2004), which prohibits imposition of "court fees" in juvenile delinquency cases, applies to the surcharges as well. Majority op. at 1278, 1282 (citing V.K.E., 902 So.2d at 347 (Sharp, J., concurring specially)). The statute provides in relevant part:
Court and witness fees.In any proceeding under this chapter, court fees shall not be charged against, nor witness fees allowed to, any party to a delinquency petition or any parent or legal guardian or custodian or child named in a summons.
(Emphasis added.) The State, however, argues that section 985.221 specifically prohibits only fees, not surcharges. See also S.L.G., 912 So.2d at 614 (concluding that "section 985.221 ... prohibits only the imposition of court fees in juvenile proceedings").
The question, then, is whether a "surcharge" is a "court fee" or something else. Neither section 985.221 in particular nor chapter 985 in general defines the term "court fees." Justice Pariente believes that, because the Legislature failed to define these terms, we cannot be sure that their usual meanings and distinctions should be applied to sections 938.08, 938.085, and 985.221. Specially concurring op. at 1285. However, both the United States Supreme Court and this Court have *1292 established that, when the Legislature has not defined a word or term in a statute, we should construe it according to its ordinary and common meaning. Smith v. United States, 508 U.S. 223, 229, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (citing Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979)); see also Montgomery v. State, 897 So.2d 1282, 1285 (Fla.2005) ("[O]ne of the most fundamental tenets of statutory construction requires that we give statutory language its plain and ordinary meaning, unless words are defined in the statute or by the clear intent of the legislature.") (quoting Seagrave v. State, 802 So.2d 281, 286 (Fla.2001)). The plain and ordinary meaning of words can be ascertained by reference to a dictionary. Nehme v. Smithkline Beecham Clinical Labs., Inc., 863 So.2d 201, 205 (Fla.2003).
A dictionary defines the term "fee" as "a charge fixed by law or by an institution... for certain privileges or services" and "a charge fixed by law for the services of a public officer." Webster's Third New International Dictionary 833 (3d ed. 1993). The Fifth District has held that, in legal terms, "`[f]ees' ... are charges fixed by law for the services of public officers or for the use of some privilege under control of the government." S.L.G., 912 So.2d at 614 (citing Crawford v. Bradford, 23 Fla. 404, 2 So. 782 (1887); 20 Am.Jur.2d Costs § 1 (2004)). It distinguishes "fees" from "costs," which "are statutory allowances recoverable by the prevailing party to reimburse the prevailing party for expenses incurred in prosecuting or defending the proceeding." Id. (citing Golub v. Golub, 336 So.2d 693, 694 (Fla. 2d DCA 1976)). No other court in Florida has defined the term "court fees." The United States Supreme Court has acknowledged that, in the context of lawsuits, "`[f]ees' are generally those amounts paid to a public official, such as the clerk of the court, by a party for particular charges typically delineated by statute." United States v. Idaho ex rel. Dir., Idaho Dep't of Water Res., 508 U.S. 1, 8, 113 S.Ct. 1893, 123 L.Ed.2d 563 (1993) (citing 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2666 (2d. ed. 1983)). "Most commonly these include such items as docket fees, clerk's and marshal's charges, and witness' fees." Wright, Miller, & Kane, supra.
Section 985.03(14) defines "court" as "the circuit court assigned to exercise jurisdiction under this chapter." When used with the word "court," the phrase "court fee" connotes a sum fixed by law that is paid or charged for a court's services, particularly those of the marshal or clerk of court. On the other hand, the term "surcharge" is defined as "a charge in excess of the usual or normal amount; an additional tax, cost, or impost" and "an additional and usu[ally] excessive charge." Webster's at 2299. In addition, a "fee" is distinguishable from a "cost," which is defined as "the amount or equivalent paid or given or charged or engaged to be paid or given for anything bought or taken in barter or for service rendered." Id. at 515. The plural form "costs" refers to "expenses incurred in litigation . . . those payable to the attorney or counsel by his client esp. when fixed by law ... [and] ... those given by the law or the court to the prevailing against the losing party in equity and frequently by statute." Id.
Based on these definitions, the term "court fees" does not include surcharges. While the term "cost," which generally connotes an amount paid for something bought or for services rendered, may include "fees," which connotes a similar *1293 amount paid for a service rendered, particularly that of a public officer, a "surcharge" refers to an additional or excessive charge, which may be punitive in nature. Based on the ordinary meanings of the terms "fee" and "surcharge," I conclude that section 985.221's prohibition against charging "court fees" does not prohibit the surcharges set forth in sections 938.05 and 938.085. To the contrary, section 985.228(4), Florida Statutes (2001), which, as I noted earlier, allows a court to impose as a penalty component "restitution in money or in kind, community service, a curfew ... or other nonresidential punishment appropriate to the offense," at least implicitly authorizes imposition of surcharges.
Even assuming that section 985.221 conflicts with sections 938.08 and 938.085, the latter statutes govern because they were enacted after section 985.221. "[I]f statutes are inconsistent or conflict, the last expression of legislative intent, in point of time or order, prevails." S.S.M., 898 So.2d at 85 (citing Askew v. Schuster, 331 So.2d 297, 298 (Fla.1976), and Sharer v. Hotel Corp. of Am., 144 So.2d 813, 816-17 (Fla. 1962)) (other citation omitted). "The last expression of the Legislature prevails due to the general presumption that later statutes are passed by the Legislature with the knowledge of prior existing laws." Id. (citing Oldham v. Rooks, 361 So.2d 140, 143 (Fla.1978), and J.A. v. State, 633 So.2d 108, 110 (Fla. 2d DCA 1994)). Here, sections 938.08 and 938.085 were enacted in 2001 and 2003, respectively. Ch.2001-50, § 5, at 320, Laws of Fla.; ch.2003-114, § 3, at 729, Laws of Fla. Section 985.221 (formerly section 39.073) has been in effect since 1990, ch. 90-208, § 5, at 1150, Laws of Fla., and was last updated in 1997. S.S.M., 898 So.2d at 85. The Legislature presumably was aware of section 985.221 when passing sections 938.08 and 938.085. See id. Therefore, sections 938.08 and 938.085 represent the last expression of legislative intent and should prevail.

C. CONCLUSION
I find that the language of the statutes is clear and unambiguous. I agree with the Fifth District's analysis in this case. A trial judge has the authority to impose the mandatory surcharges provided in sections 938.08 and 938.085 in juvenile delinquency proceedings. Accordingly, I would answer the certified question in the affirmative and approve the Fifth District's decision.
For these reasons, I respectfully dissent.
WELLS and BELL, JJ., concur.
BELL, J. dissenting.
While I personally prefer the policy-based interpretation advanced by Judge Sharp, and now the majority, I believe the plain language of the statute leads to the conclusion reached by Justice Cantero. Absent an argument that this "plain language" reading of the statute somehow leads to an absurd result contrary to legislative intent, we are limited to that conclusion. This is especially true in a case like this where even the majority acknowledges that we do not really know what the Legislature intended in regard to the question posed. See majority op. at 1278 note 2.
As Justice Cantero explains, the plain language of sections 938.08 and 938.085, Florida Statutes (2001, 2003), should lead us to answer "yes" to the certified question. Neither section 938.083 nor section 938.085 exempts juvenile delinquencies from the convictions triggering the mandatory fines imposed in these statutes. The Legislature mandated that section 938.08, *1294 Florida Statutes (2005), apply "[i]n addition to any sanction imposed for a violation of [the listed statutes]" and that section 938.085, Florida Statutes (2005), apply "in addition to any sanction imposed when a person pleads guilty or nolo contendere, or is found guilty of, regardless of adjudication a violation of [the listed statutes.]" (Emphasis added.) While I agree with the majority's argument that "the two penal systems for handling adults and juveniles are so different and guided by different philosophies and goals," I cannot overlook the fact that the Legislature knew these differences when it wrote these statutes, yet chose language encompassing both systems.
Therefore, I join Justice Cantero in his dissent and encourage the Legislature to clarify its intent on this significant issue.
NOTES
[1] To date, the Second and Fifth District Courts of Appeal have certified the same question in a combined eleven cases. We have stayed the remaining cases pending our disposition of this one.
[2] A frank response to the question before us may be that we do not really know with certainty the precise answer to the question posed concerning what the Legislature intended because the Legislature has treated the issue of the assessment of costs and surcharges in a wide variety of ways, sometimes expressly providing for assessment in juvenile proceedings and sometimes not. However, because the question must be resolved in order to review the juvenile court's assessment of costs, we must do our best to provide an answer.
[3] The most serious sanctions provided by the Legislature for the violation of the criminal statutes in question are punitive sanctions such as imprisonment in the state prison system, sanctions wholly inapplicable to juvenile proceedings.
[4] Of course, if the Legislature had expressly provided for an assessment in juvenile proceedings, as it has done in other instances, we would have no issue to resolve. The plain meaning of such a provision would control.
[5] The order states in relevant part:

[V.K.E.] is hereby placed on PROBATION under the supervision of the Department of Juvenile Justice with the conditions specified in this order.
It is FURTHER ORDERED that [V.K.E.] shall comply with the following sanctions.
....
17. Pay $201.00 Domestic Violence costs within sixty (60) days from the date of this order.
18. Pay $151.00 to the rape crisis fund within sixty (60) days from the date of this order.
(Emphasis added.)